[No. 51-40377-1.  Division One.  December 22, 1969.]
Panel 1

HARVEY H. JOHNSON, *Respondent,* v. E. DALE WHITMAN *et al.,*
*Appellants.*

*Cartano, Botzer & Chapman* and *Frank W. Birkholz,* for appellants.

*Ferguson & Burdell* and *W. Wesselhoeft,* for respondent.

SWANSON, J.—Defendant, E. Dale Whitman, headmaster and private elementary school proprietor, decided to build

a new schoolhouse. He consulted with the plaintiff, Harvey H. Johnson, a professional engineer, and asked for his services in designing the building. After Whitman assured Johnson that he had the money to construct the school, the parties entered into a written contract on February 13, 1963. The contract established Johnson's compensation in this manner:

> Basic fee 6% of market cost. Market cost to be arrived at as total actual cost including labor (excluding owner's labor), material, equipment rental, and subcontracts, plus 25% for owner's services as general contractor, expeditor and such labors as he performs himself.

The school was not built. Johnson sued for and obtained a judgment for his fees.

The court found that Johnson completed the work required of him under the contract in a highly skillful and professional manner. Through no fault of plaintiff, the contemplated improvements were never placed on defendant's property. Johnson submitted statements of account to the defendant Whitman for the preliminary drawings and for portions of the working drawings. A final bill dated December 27, 1963, was sent. In 1964, the parties met on several occasions, but the first time the defendant questioned the amount due for plaintiff's services was on January 28, 1965, when he wrote the plaintiff and referred to the "still undetermined balance." No error is assigned to these findings, and they become the accepted facts on appeal. CAROA 43; *Pier 67, Inc. v. King County,* 71 Wn.2d 92, 426 P.2d 610 (1967).

■■ Defendant's assignments of error 1 and 5 are to quoted portions of the trial court's oral opinion. Such statements are not rulings which can be appealed or assigned as error. A trial court's oral opinion is only an indication of the court's views or thinking, and does not become final until or unless it is incorporated in written findings or conclusions of law. *Ferree v. Doric Co.,* 62 Wn.2d 561, 383 P.2d 900 (1963); *Dillenburg v. Maxwell,* 70 Wn.2d 331, 413 P.2d 940, 422 P.2d 783 (1966). The second assignment of error challenges the court's finding that reasonable com-

pensation for the professional work of plaintiff and his associates is $9,308. This assignment is without merit. The finding is supported by substantial evidence in the record and will not be disturbed. *Thorndike v. Hesperian Orchards, Inc.,* 54 Wn.2d 570, 343 P.2d 183 (1959); *United Pac. Ins. Co. v. Lundstrom,* 77 W.D.2d 157, 459 P.2d 930 (1969).

The remaining assignments of error 3, 4 and 6 challenge the basis of plaintiff's recovery. First, defendant claims the contract was contingent upon the happening of a condition precedent—obtaining financing. Thus, since financing was not obtained and the building not constructed, the condition precedent was not satisfied.

If this contract was contingent upon Whitman obtaining financing, this court need go no further. The contingent nature of the contract is apparent, Whitman says, from the plain language of the agreement making "6% of actual cost" the only basis of compensation to Johnson. The trial court concluded otherwise,[1] and we agree. A review of the record discloses Johnson's testimony with regard to the matter of financing:

Q Now, prior to your signing the contract do you recall any conversation with Whitman regarding the subject of financing for the contemplated structures? A Yes. Q What in general would you recall was said? A Well, I asked him about this, this was a substantial venture for an individual to undertake, and I asked him specifically if he did have the ability to pay for it and build it, and he said he did. He had not at that time, did not elaborate where the funds were to come from or anything else. He assured me that he did have the funds to complete the project.

The defendant Whitman testified on the same subject as follows:

Q . . . And did you have any conversations with

---

[1] No error was assigned to conclusion of law 4 which stated, "The court does not accept parol evidence offered by defendants of a condition precedent to the enforceability of the owner-engineer contract; namely, that financing for the contemplated improvements need have been obtained."

Johnson prior to the signing of the contract referable to what would happen if financing fell through? A  No.

. . .

Q  Now at any time prior to the time you did give up, did you ever tell Johnson that he wasn't going to be able to be paid if you couldn't get financing? A  No. No, I don't think that ever came up.

There is substantial evidence by both parties on which the trial court properly concluded that plaintiff's compensation was not contingent upon defendant obtaining financing.

Second, Whitman challenges plaintiff's recovery by arguing it is improperly based on quantum meruit, or implied contract. Defendant contends the written contract, which the court concluded was valid and enforceable, provided for a fee if the building was constructed, but was silent as to compensation if the school was not built. Defendant argues that since the school was not built, the express contract contains no provision for compensation and precludes any recovery. Under such circumstances, none can be allowed, defendant says, on the basis employed by the trial court.

Arguably, statements in the trial court's oral opinion support defendant's position that recovery was on the basis of quantum meruit:

> The Court is of the opinion that under the rules of civil procedure and the authorities in the State of Washington that an action of contract such as this is also a proceeding in equity and that under the theory of quantum meruit —the Latin expression we have all bandied about in the courtroom—that one party to a proceeding may not be enriched at the expense of another party to a proceeding who is himself not at fault.

Defendant relies upon a proposition stated in *Chandler v. Washington Toll Bridge Authority*, 17 Wn.2d 591, 604, 137 P.2d 97 (1943), that:

> A party to a valid express contract is bound by the provisions of that contract, and may not disregard the same and bring an action on an implied contract relating to the same matter, in contravention of the express contract.

A close examination of *Chandler* shows it to be inapposite. The plaintiff in that case, by an express contract, agreed to furnish certain engineering services to Pierce County and certain franchise holders, contingent upon the county's ability to finance the project. Financing was not obtained, and the contract terminated. A newly created agency of state government used his work. Chandler's claim was based solely on a quasi contract, as stated on p. 600:

> Appellant does not rely upon any contract implied in fact. Indeed, his complaint contains no allegations which could be construed as alleging the existence of any such contract.

▮▮▮▮  The action here was commenced on a written contract between the parties, but an express contract is not necessarily inconsistent with an implied contract, since there are two types of implied contracts—contracts implied in fact and contracts implied in law. The distinction between the two is recognized and discussed in Washington cases,[2] and in *Chandler*, 17 Wn.2d at 600, upon which defendant relies, it is stated:

> Generally speaking, the law recognizes two classes of implied contracts: those implied in fact, and others implied in law. Those falling within the latter classification are generally termed quasi contracts. [Citations.] Contracts implied in fact arise from facts and circumstances showing a mutual consent and intention to contract. [Citations.] Quasi contracts arise from an implied legal duty or obligation, and are not based on a contract between the parties, or any consent or agreement. [Citations.]

See *Edwards v. Surety Fin. Co.*, 176 Wash. 534, 30 P.2d 225 (1934); *Mill & Logging Supply Co. v. West Tenino Lbr. Co.*, 44 Wn.2d 102, 265 P.2d 807 (1954). The meaning of an implied contract was further defined in *Ross v. Raymer*, 32 Wn.2d 128, 137, 201 P.2d 129 (1948):

> A true implied contract, or contract implied in fact, is an agreement which depends for its existence on some

---

[2]See generally Shattuck, *Contracts in Washington, 1937-1957*, 34 Wash. L. Rev. 24 (1957). But see *Plumbing Shop, Inc. v. Pitts*, 67 Wn.2d 514, 408 P.2d 382 (1965).

act or conduct of the party sought to be charged, and arises by inference or implication from circumstances which, according to the ordinary course of dealing and the common understanding of men, show a mutual intention on the part of the parties to contract with each other.

A contract implied in fact does not describe a legal relationship which differs from an express contract. *Johnson v. Estate of Suddreth,* 59 Wn.2d 517, 368 P.2d 907 (1962). Only the mode of proof is different. *Troyer v. Fox,* 162 Wash. 537, 298 P. 733, 77 A.L.R. 1132 (1931). A contract implied in fact arises when the conduct of the parties shows an intention to contract. *Ross v. Raymer, supra.* There must be an offer and an acceptance. *Milone & Tucci, Inc. v. Bona Fide Builders, Inc.,* 49 Wn.2d 363, 301 P.2d 759 (1956).

Acts and conduct, as well as words, may show an offer and an acceptance. Plaintiff Johnson prepared plans and furnished services as requested. The court properly concluded:

> [T]he defendant himself requested of plaintiff a breakdown showing reasonable charges on a time basis for the services of plaintiff and his associates, which request was granted by plaintiff in the form of an itemization as set forth in Exhibit 22 herein, sometime after it became apparent that the contemplated improvements would not in fact be made on the realty; . . . [Conclusion of law 5.]

Whitman's letter of January 28, 1965, referring to the "still undetermined balance," and his oral statements, coupled with a payment of $150 on account, support a finding of a promise to pay implied in fact from defendant's words, acts, and conduct. The court said the plaintiff should be compensated on a reasonable basis, which he concluded meant an hourly rate. This is the provision of the contract implied in fact which was discoverable from the parties' acts and conduct.

It thus appears to us that the trial court granted plaintiff's recovery on an hourly basis from Whitman's implied-in-fact promise to pay. An implied-in-fact contract was

found from the words, acts, and conduct of the parties on a subject not mentioned in the express contract, namely, the basis for compensation in the event the building was not constructed.

> There cannot be an express contract and an implied one relating to the same subject matter and covering all its terms. In such case the express contract would supersede the implied one. [Citations.] But there may be an implied contract on a point not covered by an express one. [Citations.]

*Lautenbach v. Meredith,* 240 Iowa 166, 35 N.W.2d 870, 871 (1949). *Cf. University Properties, Inc. v. Moss,* 63 Wn.2d 619, 388 P.2d 543 (1964).

Here, the implied-in-fact contract does not contravene the terms of the express contract as in *Chandler.* Since the written contract was not contingent on securing financing, a reasonable interpretation of the express contract, together with the implied-in-fact contract, indicated that the parties intended that Johnson should receive payment for his services.

■ Although the court discussed quantum meruit in its oral decision, it concluded as a matter of law that the agreement between the parties was a legally enforceable contract. Since these two theories are inconsistent, we must accept the court's conclusion of law as controlling. An oral decision consistent with findings and conclusions may be used to interpret them, but an inconsistent oral decision cannot be used to impeach findings and conclusions. *Ferree v. Doric Co.,* 62 Wn.2d 561, 383 P.2d 900 (1963). Even if the trial court based the award on quantum meruit, we would still affirm.

> A superior court decree which is based on an erroneous ground will be affirmed on appeal if there is an alternate ground presented by the pleadings and the record which supports the decree.

*Northern Pac. Ry. v. Washington Util. & Transp. Comm'n,* 68 Wn.2d 915, 924, 416 P.2d 337 (1966).

Judgment affirmed.

JAMES, C. J., and FARRIS, J., concur.