[No. 35819.    Department One.    February 8, 1962.]

FRANCIS W. JOHNSON et al., *Respondents,* v. *Estate of* LULU F. SUDDRETH, *Appellant.**

* Reported in 368 P. (2d) 907.

*Benn R. Agor,* for appellant.

*Robert Karr,* for respondents.

WEAVER, J.—This action was commenced by Mr. and Mrs. Francis W. Johnson against the administrator of Lulu F. Suddreth's estate for the value of Mrs. Johnson's personal services to decedent during the last seven months of her terminal illness.

Defendant-administrator produced no evidence at the trial. He appeals from a $1,500 judgment against the estate.

Defendant's first assignment of error is directed to finding of fact III:

"That from on or about February 10, 1959 until the date of Lulu F. Suddreth's death on September 13, 1959, Plaintiff Elda L. Johnson performed many services for the said Lulu F. Suddreth, with the knowledge and approval of Lulu F. Suddreth, such as washing, ironing, cleaning and cooking and made many trips to the grocery stores, drug stores and other places for Lulu F. Suddreth, in Plaintiff's own car, expending Plaintiff's gas and oil; that Plaintiff Elda L. Johnson was on constant call, both day and night, to assist and help the said Lulu F. Suddreth; that Lulu F. Suddreth was a woman eighty-one years of age at the time of her death who was seriously ill the last months of her life and required quite constant care and attention; that Plaintiff Elda L. Johnson spent an average of sixty-three hours per week for and on behalf of the said Lulu F. Suddreth between February 10, 1959 and September 13, 1959; that no payment was received for these services and expenses prior to the death of Lulu F. Suddreth; that the reasonable value of these services, including money expended for gas and oil for Plaintiff's car, is in the amount of $1500.00."

The record discloses: (a) Mrs. Johnson performed the duties of a practical nurse for a bedridden patient; (b) on several occasions, decedent telephoned Mrs. Johnson, as early as three-thirty in the morning, to come to her home; (c) decedent would write lists of duties, errands,

and shopping to be done for her by Mrs. Johnson. A disinterested witness testified:

"Q. . . . Mrs. Goldman, was Mrs. Suddreth the type of person who would pay for services she received? A. Yes, from years past she suggested or said always she wouldn't let anybody work for her for nothing."

She further testified:

". . . she never let anybody do anything for her that she didn't pay them."

Although the admissibility of evidence of a transaction with a decedent was the principal question of law presented during trial, Mrs. Johnson testified without objection:

"Q. You indicated in your answer there that you had received prior compensation. A. Yes, sir. Q. Was it on the basis of that prior compensation that you believed that you might be compensated for this work that you did during this period of time? A. That's right."

We believe that the record fully sustains finding of fact III made by the trial court.

Defendant's principal assignment of error is directed to the trial court's conclusion

"That an implied contract existed between Plaintiff Elda L. Johnson and Lulu F. Suddreth for payment of the services rendered Lulu F. Suddreth and expenses occasioned Plaintiffs between February 10, 1959 and September 13, 1959."

■ An implied contract does not differ from an express contract except in the mode of manifesting assent. There must be evidence of the acts and conduct of the parties, viewed in the light of surrounding circumstances, to justify the inference that promisee understood that promisor intended to make a promise and to support a conclusion that there was a meeting of the minds. Restatement, Contracts § 5; *McKevitt v. Golden Age Breweries*, 14 Wn. (2d) 50, 52, 126 P. (2d) 1077 (1942), and cases cited.

■ The rule governing the disposition of this appeal is succinctly set forth in *Johnson v. Nasi*, 50 Wn. (2d) 87, 91, 309 P. (2d) 380 (1957):

"A party seeking to establish a claim against an estate for services rendered to the decedent during his or her lifetime has the burden of proving a contract, express or implied, to pay for the services; and the evidence to support such claim must be clear, cogent, and convincing. *Ross v. Raymer, supra* [32 Wn. (2d) 128, 201 P. (2d) 129 (1948)].

"An implied contract is an agreement depending for its existence on some act or conduct of the party sought to be charged and arising by implication from circumstances which, according to common understanding, show a mutual intention on the part of the parties to contract with each other. The services must be rendered under such circumstances as to indicate that the person rendering them expected to be paid therefor, and *that the recipient expected, or should have expected to pay for them.*" (Italics ours.)

██ The duties Mrs. Johnson performed during decedent's terminal illness were beyond the scope of neighborly concern and helpfulness. Telephone calls and written memoranda by decedent are evidence that she requested Mrs. Johnson to perform these duties for her. As this court said in *Hardung v. Green,* 40 Wn. (2d) 595, 597, 244 P. (2d) 1163 (1952):

"The general rule seems to be that, in the absence of circumstances indicating otherwise, it is inferred that a person who requests another to perform services of value for him thereby bargains and by implication agrees to pay for such services. Restatement, Restitution, § 107 (2); *Cramer v. Clark,* 121 Wash. 507, 209 Pac. 688, 24 A. L. R. 970."

There were no reciprocal benefits between Mrs. Johnson and decedent (*Allerton v. Allerton,* 133 Wash. 260, 266, 233 Pac. 632 (1925)), a consideration that distinguishes the instant case from the factual pattern of *Johnson v. Nasi, supra.*

We conclude, as did the trial court, that plaintiff's evidence satisfied the requirements of the rule heretofore announced by this court.

The judgment is affirmed.

FINLEY, C. J., HILL, ROSELLINI, and FOSTER, JJ., concur.