[No. 1678-1.   Division One.   January 28, 1974.]

RICHARD T. KING, *Respondent*, v. WARREN V. CLODFELTER, *as Executor, Appellant.*

*Allen Lane Carr,* for appellant.
*John P. Cogan,* for respondent.

CALLOW, J.—The defendant, as executor of the estates of Julian and Doris Newbert, appeals from a judgment awarded the plaintiff for architectural and planning services performed for the decedents before their death. The plaintiff has cross-appealed contending the award was inadequate.

The plaintiff-architect Richard King brought suit upon a claim rejected during the probate of the estates of the decedents. The claim was filed originally under two theories: one for services rendered and the other for lost profits. Throughout the presentation of the plaintiff's case, the defendant resisted the introduction of evidence of a transaction with the decedent Julian Newbert on the ground that such would be contrary to RCW 5.60.030.

The evidence was that the plaintiff prepared and submitted applications for the rezoning of real estate owned by the defendants, and simultaneously submitted an application for a planned unit development of 43 condominium units on the same property to the King County Planning Department. The applications were accompanied by architectural drawings, which have been admitted in evidence. The plaintiff attended hearings on the matter and presented the proposal, which was adopted.

The trial judge awarded to the plaintiff $9,200, which he found to be the reasonable value of his services plus $200 for the expenses he incurred.

The following issues are raised by the defendant-appellant: (1) Did introduction of evidence concerning work performed by the plaintiff for the decedents violate the deadman's statute, RCW 5.60.030? (2) Was the defendant, after repeatedly asserting the bar of the statute during the plaintiff's case, estopped to introduce the actual written contract between the parties at the beginning of the defendant's case? The plaintiff has cross-appealed raising as an issue whether the judgment was awarded on an erroneous basis in that the trial court granted judgment for the amount of services proven by clear, cogent and convincing evidence to have been performed by the claimant rather than awarding judgment on the basis of the enrichment and enhancement of the recipient decedents' estate.

The initial issue to be confronted is whether the evidence introduced should have been excluded under the statute. The challenged testimony may be summarized as follows: (1) The assistant director of the King County Planning Department testified about the applications for rezoning filed by the decedent and the role the decedent and the architect separately played in assisting that process. (2) The director of planning for a private firm testified to his examination of the work product of the claimant and the value of that work. (3) An architect testified to his examination of the work product of the plaintiff and its approximate value. (4) The plaintiff testified as to the work he performed for the deceased. It is contended that the testimony of the plaintiff concerned a transaction with the deceased and that the testimony of the other witnesses was an effort to prove indirectly what the plaintiff could not prove directly.

■ The test of whether testimony would concern a "transaction" with a deceased as defined in RCW 5.60.030 is whether the deceased, if living, could contradict the witness of his own knowledge. *Jacobs v. Brock,* 73 Wn.2d 234, 437 P.2d 920 (1968); *In re Estate of Wind,* 27 Wn.2d 421, 178 P.2d 731, 173 A.L.R. 1276 (1947); *Diel v. Beekman,* 7 Wn. App. 139, 499 P.2d 37 (1972). Since *Ah How v. Furth,*

13 Wash. 550, 43 P. 639 (1896), the rule has been that testimony of a party as to work performed for a decedent and about any payment received from the decedent for the work does not constitute proof of a transaction as forbidden by the statute. Such testimony relates solely to the acts of the witness and does not tend to prove the existence of an express contract. *Woeppel v. Simanton*, 53 Wn.2d 21, 330 P.2d 321 (1958); *Boettcher v. Busse*, 45 Wn.2d 579, 277 P.2d 368, 49 A.L.R.2d 191 (1954). The testimony presented may not involve the statements and acts of the decedent. Within these guidelines, a claimant may testify about the work and services he performed which benefited a decedent without thereby testifying about a contract which may have existed between himself and the decedent for the performance of those services. *Blair v. McKinnon*, 40 Wn.2d 492, 244 P.2d 250 (1952).

*Martin v. Shaen*, 26 Wn.2d 346, 173 P.2d 968 (1946), stated that while an adverse party may not testify directly to a transaction between himself and the deceased, neither may he testify indirectly and thereby create an inference as to what transpired between himself and the decedent. *Martin v. Shaen* does not require a claimant to prove an authority or inducement to perform the work emanating from the decedent. Rather the performance of work in such circumstances will give rise to an implication that authority, inducement and acceptance existed and imply the existence of a contract between the parties. While RCW 5.60.030 forbids testimony by a claimant about an oral contract with the decedent, the testimony concerning the claimant's own performance may substantiate an implied contract, the implication being that the work would not have been performed in the face of rejection from the decedent. *Blair v. McKinnon, supra* at 495.

■ Here, the testimony supported an implied contract to pay the reasonable value of the services performed. The services were useful, of a character usually charged for and were performed under such circumstances that the decedent must have known that they were being performed.

The evidence established the rendering of the services without full benefit to the architect. These facts give rise to the implication that such services were performed at the request of the decedent and that the decedent intended to compensate the claimant for those services. *Hardung v. Green,* 40 Wn.2d 595, 244 P.2d 1163 (1952).

As said in *Johnson v. Estate of Suddreth,* 59 Wn.2d 517, 519, 368 P.2d 907 (1962), concerning the proof of the consent of the other contracting party:

> An implied contract does not differ from an express contract except in the mode of manifesting assent. There must be evidence of the acts and conduct of the parties, viewed in the light of surrounding circumstances, to justify the inference that promisee understood that promisor intended to make a promise and to support a conclusion that there was a meeting of the minds. Restatement, Contracts § 5; *McKevitt v. Golden Age Breweries,* 14 Wn. (2d) 50, 52, 126 P. (2d) 1077 (1942), . . .

*See also Johnson v. Nasi,* 50 Wn.2d 87, 309 P.2d 380 (1957).

The testimony admitted did not contravene the statutory provisions.

All during the presentation of the testimony of the plaintiff, the defendant assiduously objected to any testimony by the plaintiff that pertained to the deceased. The court diligently and properly excluded any testimony for the plaintiff concerning any relationship with the decedent but permitted the plaintiff to testify about his own activities regarding the subject real property. When the plaintiff rested, the defendant recalled Mr. King to the stand, showed him the marked exhibit which was the written contract between the plaintiff and the decedent and stated that he proposed to offer it into evidence. The plaintiff then strenuously objected to the admission of the exhibit stating that he had been forced to present his case on the theory of implied contract in view of the opposition of the defendant to any proof of the contract relationship itself and that the defendant should not be allowed to change his position upon presenting his defense. The trial court refused the offer of the contract and the defendant rested. The position

taken by the plaintiff is that the defendant-executor is barred from introducing the contract by the doctrine of judicial estoppel which prevents a party from taking inconsistent positions in litigation.

The plaintiff's case consisted of the testimony of a public official, an architect, a planner and the plaintiff. These witnesses testified about the work of the plaintiff and its value. The court, on the urging of defense counsel, excluded testimony by the plaintiff "as to any transaction had by him with, or any statement made to him, or in his presence," by the decedent. The statements and actions of the defendant were consistent with RCW 5.60.030. Trial counsel exercised the statutory right granted to an executor to stop a party in interest from giving evidence his deceased might contradict if he were alive.

The purpose of judicial estoppel is to bar as evidence statements and declarations by a party which would be contrary to sworn testimony the party has given in the same or prior judicial proceedings. *Scarano v. Central R.R.*, 203 F.2d 510 (3d Cir. 1953); *In re Estate of Cohen*, 105 Ariz. 337, 464 P.2d 620 (1970); *Tracy Loan & Trust Co. v. Openshaw Inv. Co.*, 102 Utah 509, 132 P.2d 388 (1942); *Markley v. Markley*, 31 Wn.2d 605, 198 P.2d 486 (1948); *Masterson v. Union Bank & Trust Co.*, 86 Wash. 560, 150 P. 1126, 1918A L.R.A. 531 (1915). The doctrine seeks to avoid inconsistency, duplicity and the waste of time. *Rushlight v. McLain*, 28 Wn.2d 189, 182 P.2d 62 (1947); *Hardgrove v. Bowman*, 10 Wn.2d 136, 116 P.2d 336 (1941); 28 Am. Jur. 2d *Estoppel & Waiver* § 71 (1966); 31 C.J.S. *Estoppel* §§ 117, 118 (1964).

There is some indication in the authorities that the exclusion of evidence may bar the later introduction of that evidence by the objector, but other cases have held the doctrine inapplicable in such a situation. 31 C.J.S. *Estoppel* § 118 (1964). No authority has stated, however, that reliance upon the protection of the deadman's statute would bar the later introduction of a written contract between the

decedent and a claimant where damages shown under an implied contract theory might exceed the consideration specified in the terms of a written contract.

The exercise of the right to exclude on behalf of an estate testimony made inadmissible by the statute adopted to protect estates should not have barred the offer of the exhibit by the objector at a later time when the events of the trial made it apparent that the estate would be hurt more than it would be helped by the exercise of the right. The evidence was then admissible to explain the transaction. *Carter v. Curlew Creamery Co.*, 16 Wn.2d 476, 134 P.2d 66 (1943). The statute does not prevent testimony on behalf of a decedent. *Malacky v. Scheppler*, 69 Wn.2d 422, 419 P.2d 147 (1966). The positions taken were not inconsistent. Even if, for argument's sake, the waiver of the statute is considered as not consistent with the previous insistence upon its protection, the position taken was on a point of law and was not an inconsistent assertion of fact. *See* 2 L. Orland, Wash. Prac. § 382 (3d ed. 1972). The exclusion of the testimony during the course of the plaintiff's case was a prudent defense which the executor was bound to assert lest he be criticized for delinquency in the discharge of his duty. *See Ellis v. Wadleigh,* 27 Wn.2d 941, 182 P.2d 49 (1947); C. McCormick, *Evidence* § 52, at 114 (2d ed. E. Cleary 1972). The executor has a right to waive the bar of the statute, and the statute could be waived at any time to protect the estate from a recovery in excess of that which the estate had agreed to pay. *McGugart v. Brumback,* 77 Wn.2d 441, 463 P.2d 140 (1969); *Zvolis v. Condos,* 56 Wn.2d 275, 352 P.2d 809 (1960); 5 R. Meisenholder, Wash. Prac. § 170 (1965).

■ The insistence by the defense counsel in this case upon this statutory rule of evidence was not the assertion of a given state of facts. The tactics of counsel did not assume a position or vouch for the truth of a stand taken by the executor. Further, the challenge to the competency of the party to testify was not an averment of the invalid-

ity of the contract and should not preclude the defendant-executor from later asserting a defense based upon it. Moreover, this was not the offer of a written contract previously held invalid and unenforceable at the instance of the offering party but the proposal of an exhibit which the court could not admit until the estate waived the statutory bar to testimony by the claimant concerning it, at its choosing. The actions of defense counsel did not seek a result contrary to a judgment previously obtained. See *Bauer v. Bauer*, 5 Wn. App. 781, 490 P.2d 1350 (1971); *Mueller v. Garske*, 1 Wn. App. 406, 461 P.2d 886 (1969). The inconsistent positions just enumerated are those which the doctrine forbids. Here, the defendant did not claim that the contract was invalid; he objected to its admission into evidence by the claimant who was statutorily incompetent to testify about it. The heart of the doctrine is the prevention of inconsistent positions as to facts. It does not require counsel to be consistent on points of law.

The claimant will not be injured in a legal sense by the introduction of the contract. The admission of the exhibit will disclose further the facts as they existed between the parties. Injury to neither party will occur from the timing of the waiver of the statute. The plaintiff to whom the contract was not available as a basis for recovery may now rely upon it and go forward on rebuttal to develop full recovery under and possibly beyond the contract. Indeed, evidence has been introduced of work by the claimant that might be interpreted as performance well beyond that specified in the contract. This determination is for the trial court following the presentation of defendant's case including the admission of the written contract, plaintiff's rebuttal and the defendant's rejoinder, if any. In the event that the claimant can prove that the services performed went beyond the written contract, an implied contract may arise for such extra services.

The conclusion reached on this issue requires that the trial of the action be reopened.

On retrial, the damage issue raised by the plaintiff will

522

be before the court. It is apropos that the issue be considered.

■ The measure of recovery for services performed for a decedent under an implied contract is the reasonable value of the services the claimant can prove he performed. *Johnson v. Estate of Suddreth,* 59 Wn.2d 517, 368 P.2d 907 (1962); *Ferris v. Blumhardt,* 48 Wn.2d 395, 293 P.2d 935 (1956); *Muench v. South Side Nat'l Bank,* 251 S.W.2d 1, (Mo. 1952). When the evidence gives rise to an implied contract, the implication of the law is that the one contracting for the performance will pay the performer a reasonable amount for the labor and materials expended in the work. *Jacobs v. Brock,* 73 Wn.2d 234, 437 P.2d 920 (1968). *See* D. Dobbs, *Remedies* § 4.5 (1973). As pointed out by *Dravo Corp. v. L.W. Moses Co.,* 6 Wn. App. 74, 492 P.2d 1058 (1971), the term "quantum meruit" may be applied to the compensation allowed for services performed under an implied contract. When such is the theory of recovery, a reasonable profit should also be included in the measure of damages. *Central Steel Erection Co. v. Will,* 304 F.2d 548 (9th Cir. 1962); *Bignold v. King County,* 65 Wn.2d 817, 399 P.2d 611 (1965); *Losli v. Foster,* 37 Wn.2d 220, 222 P.2d 824 (1950).

This action claimed breach of contract and proceeded through trial on the basis of implied contract. Unjust enrichment was not a theory espoused or appropriate. The measure of damages granted under that theory for improvements to real property should not be intertwined with that permitted under implied contract. *See Hardgrove v. Bowman,* 10 Wn.2d 136, 116 P.2d 336 (1941). In the situation presented by this case, an implication does not arise that the decedent would pay a sum relating to the enhancement of the estate or the amount the estate is enriched by the work. It cannot be implied that an owner and architect dealing at arms' length would so agree upon the consideration to be paid for performance. *See Jones v. Brisbin,* 41 Wn.2d 167, 247 P.2d 891 (1952). Parties normally do not bargain for a consideration to the performer beyond that

which the decedent would have transacted at the time with others performing the same services in the locality. *Baker v. Estate of Brown*, 294 S.W.2d 22 (Mo. 1956); *Barnes v. Lozoff*, 20 Wis. 2d 644, 123 N.W.2d 543 (1963). *See also Bliss v. Bliss*, 363 S.W.2d 309 (Tex. Civ. App. 1962); *Baylor Univ. v. Carlander*, 316 S.W.2d 277 (Tex. Civ. App. 1958). The issue of damages under an implied contract for services peformed for a decedent must be approached from the standpoint of the actual value of that proven to have been performed by the claimant rather than from the vantage of benefit to or enhancement of the estate. *See Evans v. Mason*, 82 Ariz. 40, 308 P.2d 245, 65 A.L.R.2d 936 (1957).

The judgment is reversed, and the cause remanded for further proceedings consistent with this decision.

FARRIS and JAMES, JJ., concur.